# Harper v. Consolidated Rubber Co.    Commonwealth's Appeal.

*Sheriff's sale—Distribution of proceeds—Priorities—Commonwealth's claim for taxes—Mortgage—Purchase-money mortgage—Mortgage as an estate—Act of June 15, 1911, P. L. 955—Attorney's commissions—Costs.*

1. Attorney's commissions stipulated for in a warrant of attorney accompanying a bond, or in a mortgage, are not costs, they are part of the judgment and belong to the plaintiff.

2. Such commissions are to be preferred or postponed as the principal debt is preferred or postponed.

3. Where an individual conveys land to a corporation and receives from the company a purchase-money mortgage, the corporation acquires property therein whether it be deemed the real owner of the land or the possessor of an equity of redemption, and such property is within the express meaning of the word "property" in the Act of June 15, 1911, P. L. 955, which provides "whenever the property of a corporation shall be sold at a judicial sale, all taxes due the Commonwealth shall first be paid out of the proceeds, before any judgment, mortgage, or other claim or lien against such corporation."

4. Sweeney v. Arrowsmith, 43 Pa. Superior Ct. 268, is distinguished by the fact that the corporation in that case did not execute a purchase-money mortgage, but simply acquired the property subject to the mortgage, and that neither the mortgage nor the judgment in the sci fa. was a lien against the delinquent company within the meaning of the Act of 1911.

5. One who conveys land to a corporation and takes a purchase-money mortgage to himself takes it with notice of the act and knows that the act in express terms gives preference to the Commonwealth for state taxes which might in the future be assessed against the mortgagor.

6. The title to mortgaged premises may be accounted in the mortgagee, as between the parties to the transaction represented by the mortgage, so far as it is necessary to render the instrument effective as a security, but as to all other persons, with some special exceptions, the mortgagor is regarded as the owner, and the mortgage as a mere encumbrance and accessory to the debt.

7. The Act of June 16, 1836, P. L. 777, giving courts the power to determine disputes as to the distribution of the proceeds of sheriff's sales according to law and equity, has no application to

the rights of the Commonwealth, where the state has precedence under the express provisions of the act of assembly.

8. The first thought of the courts must always be the preservation of government, unhindered by lesser rights which may suffer by enforcement of the Commonwealth's rights. The protection which individuals receive at the hands of the government is compensation for any so-called impingement of right.

9. The word "any" in the Act of 1911, as used in the phrase "any judgment, mortgage, other claim or lien against such corporation" means "all," and therefore comprehends all mortgages against such corporation, be they for purchase money or otherwise.

10. The legislative classification in the Act of 1911 of mortgages as liens subject to the same rule of subordination which the statute lays down for "any other claim or lien," is, in itself, enough to dispose of the argument that the mortgage in question constituted an estate in the land which could not be displaced as though it were but a claim of the lien class.

Argued September 29, 1925. Appeals, Nos. 91 and 92, 1925, by Commonwealth, from order of C. P. Westmoreland Co., Nov. T., 1924, Nos. 21 and 22, distributing fund raised by sheriff's sale in case of C. M. C. Harper v. Consolidated Rubber Co., alias dictus Consolidated Rubber Corporation. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Exceptions to distribution by sheriff of fund raised by sale of real estate at sheriff's sale. Before COPELAND, P. J.

Exceptions sustained. Commonwealth appealed.

*Error assigned* was order, quoting bill of exception.

*Wm. S. Rial,* with him *Geo. W. Woodruff,* Attorney General, *Alex. McConnell* and *H. E. Marker,* for appellant.—Priority of lien from the date of settlement and first payment out of the proceeds on a judicial sale for the Commonwealth's taxes now rests upon the provisions of the Act of 1911: Traction M. Co. v. Ry., 261 Pa. 153; Lewis v. Power Co., 62 Pa. Superior Ct. 282.

By the literal provisions of this Act of 1911, P. L. 955, the Commonwealth has the right to have allowed to it and first paid out of the proceeds of the judicial sale of defendant's property the various capital stock loans, bonus, interest and other taxes assessed against defendant: Penna. R. R. v. Pittsburgh, 104 Pa. 522.

That the Commonwealth may declare taxes a first lien and give them priority in distribution on a judicial sale is clear beyond all reasonable question: Parker's App., 8 W. & S. 449; Dungan's App., 88 Pa. 414; Anspach & Stanton's App., 112 Pa. 27; Lewis v. L., H. & P. Co., 62 Pa. Superior Ct. 282.

Commissions, it has been held, do not belong to the attorney, but to the creditor: McAllister's App., 59 Pa. 204; Pereyra's App., 126 Pa. 220; Wilson v. Ott, 173 Pa. 523; Galligan v. Heath, 260 Pa. 457.

Whatever may have been the ancient doctrine as to the estate or right of a mortgagor in his real estate, the law to-day is clear that the mortgagee's rights as to third persons do not give him an estate in the land: Presbyterian Corp. v. Wallace, 3 Rawle 110; Craft v. Webster, 4 Rawle 242; Horstman v. Gerker, 49 Pa. 282; Moore v. Cornell, 68 Pa. 320.

*Charles C. Crowell,* with him *J. H. W. Simpson,* for appellee.—A mortgage is a conveyance of title, the mortgagor retaining merely an equity of redemption: Kauffman's App., 112 Pa. 645; Gangwere's App., 36 Pa. 466; Nerpel's App., 91 Pa. 334; Wells v. Van-Dyke, 109 Pa. 330; Peebles's Est., 157 Pa. 605; Gill v. Weston, 110 Pa. 312.

If this appeal is to become merely a contest between ancient and modern doctrine, then we refer the court to the opinion of Mr. Justice WOODWARD in Gangwere's App., 36 Pa. 471, decided in 1860; Trayon v. Munson, 77 Pa. 250; Nerpel's App., 91 Pa. 334; Wells v. Van-Dyke, 109 Pa. 330; Gill v. Weston, 110 Pa. 312; Bryar's

App., 111 Pa. 81; Kauffman's App., 112 Pa. 645; Datesman's App., 127 Pa. 358; Peebles's App., 157 Pa. 605.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, November 23, 1925:

This is an appeal by the Commonwealth from an order of the court below distributing a fund raised by the sheriff through a sale of property held in the name of the Consolidated Rubber Company, a Delaware corporation. The property in question was sold under a fi. fa. sur judgment entered on a warrant of attorney accompanying a bond, which in turn accompanied a purchase-money mortgage given by the rubber company to Harper, the present plaintiff. The Commonwealth claimed state taxes settled against the corporation after the mortgage was recorded. The sheriff allowed this claim in full, thus giving it priority over plaintiff's judgment for the principal debt and attorney's collection commissions due under the terms of the before-mentioned bond and on another bond of similar kind, also held by him and accompanying a second purchase-money mortgage on the same premises; whereupon plaintiff excepted. The court below sustained the exceptions and ordered the fund, after payment of local taxes, costs, and attorney's commissions, to be applied on account of the judgment debts due to plaintiff. Since the fund was inadequate to satisfy these latter claims, the Commonwealth received nothing; hence the present appeals.

The attorney general contends that, under the Act of June 15, 1911, P. L. 955, the State's claim is preferred to those of plaintiff. The statute in question provides, by section 1, that "all state taxes......settled against any corporation........shall be a first lien upon the...... property.....of such corporation.....; and whenever the......property of a corporation......shall be sold at a judicial sale, all taxes,......due the Commonwealth shall first be allowed and paid out of the proceeds of such

sale, before any judgment, mortgage, or any other claim or lien against such corporation."

The court below held, on two grounds, that this case was not governed by the above act; first, because, in the present instance, the attorney's fees alone would exhaust the proceeds of the sheriff's sale, and "Even taxes due the Commonwealth may not be allowed as against attorney's commissions" for collection stipulated for in bonds and mortgages. To sustain the position just stated, the court below cited Bauer v. Wilkes-Barre Light Co., 274 Pa. 165, which rules that receivers' counsel fees and commissions are allowable as costs ahead of claims of the Commonwealth; but attorney's commissions stipulated for in a warrant of attorney accompanying a bond, or. in a mortgage, are not costs,—they are part of the judgment and belong to the plaintiff: Mahoning County Bank's App., 32 Pa. 158, 160; McAllister's App., 59 Pa. 204, 208; Schmidt & Friday's App., 82 Pa. 524, 527; Daly v. Maitland, 88 Pa. 384, 386; Calligan v. Heath, 260 Pa. 457, 462, 463. Consequently such commissions are to be preferred or postponed as the principal debt is preferred or postponed.

The second ground stated by the court below, and the one on which plaintiff largely bases his argument, is that the rubber company, having given purchase-money mortgages at the time the land was deeded to it, had no more than an equity of redemption; that the real ownership of the property remained in plaintiff, as mortgagee, and, consequently, there was no judicial sale of "the property of [the present] corporation," as required by the above-quoted act in order that the Commonwealth might have a preference; that, in any event, plaintiff's estate in the land, under the mortgage accompanying the bond here sued on, could not be discharged as though it were a mere lien. ·

In considering these propositions, we must look at the language of the statute, which, eliminating words unnecessary to our present consideration, reads, "Whenever

the property of a corporation shall .be sold at a judicial sale, all taxes due the Commonwealth shall first be paid out of the proceeds before any judgment, mortgage, or other claim or lien against such corporation."

It is to be noticed that the statute does not say "Whenever the real estate of a corporation shall be sold," but, "Whenever the property of a corporation shall be sold." Whether the rubber company be viewed as the real owner of the land in controversy or merely as the possessor of an equity of redemption, whatever it had was "property"; and it is conceded of record that this property was, at the behest of plaintiff, seized and taken in execution by the sheriff as belonging to the Consolidated Rubber Corporation. Finally, the bonds and mortgages here involved, on which plaintiff bases his claims, were given by the rubber company itself; hence they come directly within the words of the act as either "judgments, mortgages, claims or liens against such corporation." All this being manifestly true, the question may well be asked, how, under the circumstances, did the court below sustain its position that the Commonwealth's claim for state taxes was not entitled to preference?

Sweeney v. Arrowsmith, 43 Pa. Superior Ct. 268, is relied on as authority. There, a prior act, containing substantially the same terms as the Act of 1911, was construed and applied; but the facts were materially different from those at bar. The purchase-money mortgage, which was there given precedence over the Commonwealth's claim for state taxes assessed against the corporation figuring in that case, was not executed by the delinquent corporation, but by one of its predecessors in title; the corporation had acquired the land subject to the mortgage. That this was a controlling fact is clearly indicated by the following passage from the opinion of President Judge ENDLICH, on whose opinion the Superior Court affirmed. He said (p. 271): "The liens postponed to that of the Commonwealth......are

such as are created by or procured *against the delinquent corporation,* [and] it is very plain that neither the mortgage, incumbered with which the Pendora Park Company bought this land, nor the judgment on the sci. fa., was a lien created or obtained *against the company."* In the present case, as previously said, the bonds and mortgages were given by the rubber company; they were its direct obligations, and, as such, are clearly within the class of liens over which the act gives preference to the claims of the Commonwealth.

Again, in Sweeney v. Arrowsmith, supra, the court states (p. 270), as a ground of decision, that "It cannot be reasonably supposed......that one selling land to an individual [which was the fact in that case] and taking a mortgage upon it from him, for part of the price, should foresee or actually contemplate the eventuality of its passing at some future time into the hands of a corporation, a failure of that corporation to pay its state tax upon capital stock, and the impairment, possibly the wiping out, of the security for the unpaid purchase money by the enforcement of a lien filed therefor by the Commonwealth and taking precedence 'of the mortgage." Of course the above reasoning does not apply here, because this is not such a case as outlined by Judge ENDLICH; on the contrary, in the present instance the land passed directly from plaintiff to the corporation and, when taking the mortgage from the latter (in August, 1921), plaintiff knew that the Act of 1911 in express terms gave a preference to the Commonwealth for state taxes which might in the future be assessed against the mortgagor.

It is true that in Sweeney v. Arrowsmith, where the mortgage itself was foreclosed on a sci. fa. instead of, as here, the premises being taken on an ordinary execution as the property of the mortgagor, Judge ENDLICH, after reaching the conclusion that the facts involved did not bring the Commonwealth's claim within the provisions of the Act of 1911, does go on to set forth the

doctrine, also invoked by the court below in the present case, that a mortgage is a conveyance of the land, and, therefore, the sheriff's sale of the mortgaged premises was a sale of the mortgagee's not the mortgagor's property. We cannot agree, however, that this doctrine can properly be held to apply against the Commonwealth under the circumstances at bar.

It must be admitted that there is great divergence of view, not only in Pennsylvania, but in other jurisdictions, as to whether a mortgage should be viewed as creating an estate in the land or simply a lien in favor of the mortgagee. The latest judicial utterance on the point will be found in Shields v. Pittsburgh, 252 Pa. 74, 76, where it is stated: "In Pennsylvania, a mortgage is, both in law and in equity, only a security for the payment of money and passes no title to the land,—the mortgagor is the owner of the land"; and it is not without significance in the present case that this view is uniformly borne out by our tax laws, which, from the Act of June 11, 1840, P. L. 507, have always expressly classed mortgages as personal estate.

Professor William H. Lloyd, in a recently published article (73 U. of P. Law Rev. 43) discusses all of the leading Pennsylvania cases on the subject in hand, and states the conclusion that, while many of our decisions are difficult, if not impossible, to be reconciled (a view which seems to be supported by a reading of the cases), the title to the mortgaged premises may be accounted in the mortgagee "as between the parties" to the transaction represented by the mortgage, "so far as it is necessary to render the instrument effective as a security," but "as to all other persons [with some special exceptions*] the mortgagor is regarded as the owner, and the mortgage as a mere encumbrance and accessory to

---

* Manufacturers' & Mechanics' Bank v. Bank of Penna., 7 W. & S. 335; Britton's App., 45 Pa. 172, and cases there cited; Nerpel's App., 91 Pa. 334; Allentown's App., 109 Pa. 75; Peebles's Est., 157 Pa. 605.

the debt"; which summarizes the predominant effect of our decisions.

The only other recent attempt at a review of the Pennsylvania authorities which we have found was made by the late Judge McPHERSON, in the case of In re Lukens, 138 Federal Rep. 188, 191, where he said: "It may perhaps be safely concluded that a mortgage in Pennsylvania is held to be either an estate or a lien, as the equities of the particular case may require, but that the general rule holds it to be a lien only, and not an estate."

Under the Act of June 16, 1836, P. L. 777, section 86, "In the distribution of the proceeds from sheriffs' sales, the court......is empowered to determine disputes according to law and equity" (Britton's App., 45 Pa. 172, 173); while this rule may apply where a dispute exists between ordinary persons on questions of precedence in the distribution of a sheriff's fund, yet it has no application to the rights of the Commonwealth where, as here, the State is entitled to precedence under the express provisions of an act of assembly. In Shoyer v. Comet O. & R. Co., 284 Pa. 189, 193, we recently said, on the subject of the "priority of state......tax liens" and the right of the legislature to give them preference over other claims, that "Our first thought must always be the preservation of government [and the] enforcing of lawful means necessary to successfully carry it forward; the means should always be available for its continued security, not hindered or prevented by lesser rights which may suffer because of such enforcement. The common good is superior to individual or private rights; [the State] therefore has a *natural equity* [and is] fairly entitled to first rank in the list of claims that may be had against any or all property. The protection which individuals receive at the hands of the government is compensation for any so-called impingement of right." This disposes of any possible question of equities between the Commonwealth and plaintiff; but, in addition, plaintiff,

as heretofore stated, put himself in the situation of a mortgagee with full knowledge that his mortgage, or any judgment for the debt secured thereby, was, by the express words of the Act of 1911, postponed to state taxes which might be assessed in the future against the corporation from which he took the mortgage. Such being the case, plaintiff has no right to complain on equitable grounds.

Here, a corporation purchased real estate which, though mortgaged by it to plaintiff, it held title to and had the right, according to "the practice in this state," "to retain possession and receive the rents and profits of ......until dispossessed by forcible proceedings": Erny v. Sauer, 234 Pa. 330, 333. This ownership, classify it as we may, was "property," and that property, while in the possession of the corporation, was levied on by the sheriff, at the behest of plaintiff (without any effort on his part to reënter) and sold as the property of the corporation, on a judgment against the corporation; thus bringing the case directly within the provision of the Act of 1911, that, "whenever the property of a corporation shall be sold at a judicial sale," state tax claims shall be preferred to mortgages and other debts of the corporation.

The case is not one, like some others in our books, where, by treating the mortgage as creating an estate in the land, rather than as a lien, and allowing the operation of certain general principles of law, the interest or claim of the mortgagee can be saved from subordination to other rights; for, under the Act of 1911, the Commonwealth is entitled to be paid "out of the proceeds of such sale before *any* judgment, mortgage, or any other claim or lien against such corporation." "Any" means "all" (Glen Alden C. Co. v. Scranton, 282 Pa. 45, 48), and therefore comprehends all mortgages against such corporation, be they for purchase money or otherwise. In addition to the fact that the word "any" is comprehensive, in the sense just stated, so that, from this stand-

point, it makes the language of the statute include a mortgage like the one at bar, it will be observed, the act before us in effect ordains that, on the distribution of a fund raised by the judicial sale of property of a corporation, all mortgages thereon given by the corporation shall be considered of the same category as "any other claim or lien against such corporation," for the purpose of their postponement to claims for taxes due the Commonwealth; and this applies with full force when, as here, the premises have been taken in execution as the property of the corporation for the purpose of enforcing payment of a debt secured by a mortgage of the corporation. Since our cases show that debts secured by mortgages are, under many circumstances, lawfully susceptible of classification as mere liens,* and since it is a matter of common knowledge that they are generally so considered, the right of the legislature thus to treat them, for a named purpose, on a given state of facts, cannot be doubted; therefore, the legislative classification, which we have in this case, of mortgages as liens subject to the same rule of subordination which the statute lays down for "any other claim or lien," is, in itself, enough to dispose of the argument that plaintiff's mortgage constituted an estate in the land which could not be displaced as though it were but a claim of the lien class.

The case before us falls squarely within the act of assembly invoked by the Commonwealth, and, under it, the State's claim for taxes is entitled to precedence; the court below erred in deciding otherwise.

The order appealed from is reversed and the record is remitted for distribution in accord with the views here expressed.

---

* Rickert v. Madeira, 1 Rawle 325, 328; Presbyterian Corp'n v. Wallace, 3 Rawle 109, 128; Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 411, 419; Lennig's Est., 52 Pa. 135, 138; Knoll v. N. Y., etc., Ry. Co., 121 Pa. 467, 473; Shields v. Pittsburgh, 252 Pa. 74, 76; Jackson v. Pittsburgh, 36 Pa. Superior Ct. 274, 280; and other cases mentioned in the Lloyd article, supra.