Scranton Lackawanna Trust Co., to use, *v.* Scranton Lackawanna Trust Co., Guardian, et al.

Argued November 29, 1932. Before Frazer, C. J., Simpson, Schaffer, Maxey, Drew and Linn, JJ.

126

*Vandling D. Rose,* with him *Herman D. Goldberg,* Deputy Attorney General, and *Wm. A. Schnader,* Attorney General, for appellant.—The appraisement determined the existence and value of the taxable interest: Frick's Est., 277 Pa. 242; Camp's Est., 298 Pa. 405; Easby's Est., 285 Pa. 60.

The lien of the tax attaches to the fee, and cannot be lost by the subsequent depreciation in value of the property: Kirkpatrick's Est., 275 Pa. 271; Frick's Est., 277 Pa. 242; Knoll v. Ry., 121 Pa. 467; Com. v. Coal Co., 296 Pa. 359; Barber's Est., 304 Pa. 235; Hartman v. Ogborn, 54 Pa. 120; Presbyterian Corp. v. Wallace, 3 Rawle 109.

The tax was entitled to priority: Eaton's App., 83 Pa. 152; Sneath's Est., 22 Pa. Superior Ct. 45; Olyphant v. Egreski, 29 Pa. Superior Ct. 116; Brine v. Ins. Co., 96 U. S. 627; Jackson v. Pitts., 36 Pa. Superior Ct. 274; Shields v. Pitts., 252 Pa. 74; Harper v. Rubber Co., 284 Pa. 444.

*N. H. Cowdrey,* of *O'Malley, Hill, Harris & Harris,* for appellee, were not heard.

OPINION BY MR. JUSTICE SIMPSON, January 3, 1933:

On the foreclosure of a first mortgage owned by appellee, a property in Scranton, Pa., was sold by the sheriff. After payment of the costs of foreclosure and sale, and of the municipal taxes due on the property, there remained a balance for distribution. It was claimed by appellee on account of the mortgage debt, and by the Commonwealth on account of a collateral inheritance tax assessed against the estate of a later owner, who inherited the property subject to the mortgage. The court below awarded the balance to the mortgagee, and the Commonwealth appeals.

The collateral inheritance tax statute, which was in force when the mortgage was executed, acknowledged, delivered and recorded, and also at the time of its foreclosure and the sale of the property, was that of June 20, 1919, P. L. 521, as immaterially amended by the Acts of May 4, 1921, P. L. 341; May 16, 1923, P. L. 244; July 12, 1923, P. L. 1078; May 14, 1925, P. L. 717, and May 15, 1925, P. L. 806. It is conceded, and properly so, that, if the question at issue had arisen prior to the passage of the Act of 1919, the decision below would have been correct. It is not less so in this case.

The assessment, under which the Commonwealth claims, was not an assessment of decedent's interest in the property sold by the sheriff, but was of all the property which she owned at the time of her death, whether real or personal, after deducting therefrom her debts, including the face amount of the mortgage, and the expenses properly allowed as a credit on the gross value of the estate. The Commonwealth's claim on the balance realized at the sheriff's sale was based, therefore, on the assessment of the whole of the estate, and not upon decedent's interest in the property sold. It does not appear whether or not, prior to the sheriff's sale, plaintiff knew of the death of the owner, but admittedly it had no notice of the intention to make the appraisement, and hence could not appeal from the assessment, or have it

properly made so far as affected the mortgaged property. The statute does not require the giving of such a notice —a fact which emphasizes the necessity for carefully scrutinizing the proceedings before making an award based thereon.

Section 2 of the Act of 1919, as amended, provides that the tax shall be assessed "upon the clear value of the property subject to the tax;" section 39 states that "The lien of all taxes imposed by this act......shall be limited to the property chargeable therewith;" and section 45 declares that "The words 'estate' and 'property,' wherever used in this act, except where the subject or context is repugnant to such construction [which is not the case here], shall be construed to mean the interest of the testator, intestate, grantor, bargainer or vendor, passing or transferred" to the subsequent owner. It follows that the inheritance tax should have been separately assessed against the mortgaged property, following the death of its then owner; and that the assessment, however made, did not disturb the lien of appellee's mortgage, which remained as a first lien on the property and every part of it, the lien of the collateral inheritance tax being restricted to the owner's equity of redemption.

The Commonwealth alleges, however, that the balance of the first sentence of section 39 antagonizes this construction. In its entirety it provides that "The lien of all taxes imposed by this act shall continue until the tax is settled and satisfied, and shall be limited to the property chargeable therewith." When, however, the whole of the statute is considered, and the meaning of the word "property" as defined by section 45, above quoted, is applied, this sentence can mean only that the lien of the tax on the equity of redemption shall continue until it is "settled and satisfied" out of the equity of redemption itself, which, by reason of the foreclosure sale, no longer exists as to this property. This conclusion is in accord with the rule that a statute, will or other instrument affecting the ownership of property,

should be so construed as not to hinder or destroy its free alienability, if such a construction is reasonably possible.

The conclusion which we have reached accords also with the opinion of Judge ENDLICH in Sweeney v. Arrowsmith, 1 Berks County Law Journal 353, which was adopted in its entirety by the Superior Court on appeal; 43 Pa. Superior Ct. 268. It was the case of a capital stock tax, over which, on distribution of the proceeds of a sheriff's sale, a mortgage earlier in date than the assessment of the tax, was given precedence. True, the case was distinguished by us in Harper v. Consolidated Rubber Co., 284 Pa. 444, where there was a tax claim of similar character, because, in the Superior Court case, the mortgage was created before the corporation, which was liable for the tax, became the owner of the property, whereas in our case the ownership of the corporation and the creation of the mortgage were simultaneous, and, at that time, the statute giving priority to the tax lien, was in full force and effect. On its own facts, we did not assert that Sweeney v. Arrowsmith was wrongfully decided. In the instant case, the lien of plaintiff's mortgage attached several years before the Commonwealth's right to an inheritance tax arose, and hence the reasoning in Sweeney v. Arrowsmith, supra, applies here.

It was also suggested that the Commonwealth's right might be sustained under section 1401 of the Fiscal Code of April 9, 1929, P. L. 343, 420. We need not consider this contention, since, no matter which way we decided the point, it would not affect our conclusion in the instant case. The mortgage now under consideration was executed, acknowledged, delivered and recorded in 1928, and the provisions of the Code, passed in 1929, in so far as, if at all, they might seem to impair the lien of the mortgage, as it existed at the time of its creation, would be unconstitutional and void: Brine v. Hartford Fire Ins. Co., 96 U. S. 627, 637.

The order of the court below is affirmed.