## Potter Title & Trust Co. v. International Penn Collieries Co.

*Shaver & Heckman,* for plaintiff.

*Coffroth & Boose,* for Sheriff of Somerset County.

BOOSE, P. J., July 23, 1949.—This case is before the court upon exceptions by execution plaintiff to the sheriff's distribution of the fund realized from the sale of defendant's personal property, consisting of one Model D 8 Caterpillar Tractor, which was sold to plaintiff for the sum of $3,700. From the records the following facts appear:

1. On July 13, 1948, plaintiff filed its chattel mortgage against defendant in the prothonotary's office, and recorded in Chattel Mortgage Book, vol. 2, page 141, encumbering the chattel which was the subject of the sheriff's sale.

2. On January 20, 1949, the Commonwealth of Pennsylvania, Department of Labor and Industry, to the use of the Unemployment Compensation Fund, entered in the prothonotary's office to no. 59, C. D., 1949, a certified lien of unpaid contributions, interest and penalties against defendant, aggregating the sum of $465.24.

3. On January 29, 1949, plaintiff confessed judgment against defendant upon the warrant of attorney contained in the note of defendant accompanying the said chattel mortgage, for the sum of $6,250 debt, attorney's commission, $312.50, with interest from January 1, 1949, said judgment being entered to no. 104, C. D., 1949.

4. On May 16, 1949, plaintiff issued a writ of fieri facias upon its judgment, and in pursuance thereof, the sheriff sold the mortgaged chattel to plaintiff for the sum of $3,700.

5. The sheriff distributed the fund as follows: (1) Sheriff's costs $161.25; (2) prothonotary's cost of writ $4; (3) attorneys' costs on writ $7.50; (4) Commonwealth of Pennsylvania, Department of Revenue, corporation taxes, $7.71; (5) Commonwealth of Pennsylvania, Department of Labor, unemployment compensation lien, no. 59, C. D., 1949, debt, interest and costs, $482.22; (6) Shaver & Heckman, attorneys' commission, $185, and (7) the balance of the fund was applied to plaintiff's judgment, no. 104, C. D., 1949, (chattel mortgage, recorded in Chattel Mortgage Book, vol. 2, page 149) $2,852.32, which exhausted the fund for distribution.

6. Plaintiff's exception to the distribution is to the sum of $482.22 distributed to the Commonwealth of Pennsylvania, Department of Labor, for unemployment compensation lien, for the alleged reason that said claim and lien is not entitled to priority as against plaintiff's chattel mortgage lien, and that plaintiff is entitled to

priority in the distribution over the said lien of the Commonwealth of Pennsylvania.

Plaintiff's claim of a preferred lien and priority in the distribution of the fund is based upon section 5 of the Chattel Mortgage Act of June 1, 1945, P. L. 1358, 21 PS §940.5, which provides:

"Any chattel mortgage executed pursuant to this act shall be a lien upon the property therein described, which lien shall be good and valid against and superior to all rights of subsequent purchasers, subsequent mortgagees and other subsequent lienors and encumbrancers, and all persons subsequently dealing with the mortgaged property or subsequently acquiring an interest therein from the time of filing of the mortgage, as provided in section eight of this act . . ."

On the other hand, the lien of the Commonwealth of Pennsylvania, Department of Labor and Industry, to the use of the Unemployment Compensation Fund, for unpaid contributions, interest and penalties, although filed subsequent to plaintiff's chattel mortgage, rests upon the Unemployment Compensation Law of December 5, 1936, P. L. 2897 (1937), as amended by the Act of April 23, 1942, P. L. 60, 43 PS §788.1, which provides as follows:

"All contributions and the interest and penalties thereon due and payable by an employer under the provisions of this act shall be a lien upon the franchises and property, both real and personal, of the employer liable therefor, from the date a lien for such contributions, interest and penalties is entered of record in the manner hereinafter provided. Whenever the franchises or property of an employer is sold at a judicial sale, all contributions and the interest and penalties thereon thus entered of record shall first be allowed and paid out of the proceeds of such sale in the same manner and to the same extent that State taxes are paid: Provided, however, that the lien hereby created shall not

be prior to pre-existing duly recorded real estate mortgages."

Section 1401 of the Fiscal Code of April 9, 1929, P. L. 343, as amended by the Act of June 3, 1933, P. L. 1474; the Acts of June 11, 1935, P. L. 303, and May 28, 1943, P. L. 794, 72 PS §1401, provides as follows:

"All State taxes imposed under the authority of any law of this Commonwealth, now existing or that may hereafter be enacted, and unpaid bonus, penalties and all public accounts settled against any corporation, association, or person, including interest thereupon, shall be a first lien upon the franchises and property, both real and personal, of such corporation, association, or person, from the date of settlement and whenever the franchises or property of a corporation, association, or person shall be sold at a judicial sale, all taxes, interest, bonus, penalties, and public accounts due the Commonwealth shall first be allowed and paid out of the proceeds of such sale before any judgment, mortgage, or any other claim or lien against such corporation, association, or person: Provided, however, Where the lien of a ground rent, mortgage, or other lien created by or entered against a predecessor in title to such corporation, association, or person is discharged by a judicial sale, the lien of the Commonwealth shall be transferred from the property sold to the fund realized from the sale, and the purchaser shall take free of the lien of the Commonwealth, notwithstanding that the fund may be insufficient to pay all or any part of the same, and on distribution of the fund, the Commonwealth's lien shall be postponed in payment to said lien or liens created by or entered against such predecessor in title, but shall not be postponed in payment to local taxes or municipal claims."

It will thus be observed that the above-quoted portions of the several statutes cited are apparently in con-

flict; but they must be read together and interpreted in the light of the many judicial constructions placed thereon. It must be conceded that the lien of the execution issued upon plaintiff's judgment, although entered subsequent to the lien of the Commonwealth of Pennsylvania, Department of Labor and Industry, relates back to the date of filing the chattel mortgage on July 13, 1948.

The Chattel Mortgage Act of July 1, 1945, expressly provides that the lien of any levy which may be made upon the mortgaged property by virtue of any execution based upon a judgment entered upon the accompanying note shall relate back to the date of the filing of the chattel mortgage. But the Unemployment Compensation Act above cited places the lien of unpaid contributions, interest and penalties on a priority of State taxes, and provides that upon a judicial sale the lien thus entered of record shall *first be allowed and paid out of the proceeds of such sale* in the same manner and to the same extent that State taxes are paid, except that such lien shall not be paid prior to preëxisting duly recorded real estate mortgages. Under the provisions of the Fiscal Code above recited, upon a judicial sale all taxes, interest, bonus, penalties due the Commonwealth shall *first be allowed and paid out of the proceeds of such sale before any judgment, mortgage or any other claim or lien*: Harper v. Consolidated Rubber Co., 284 Pa. 444; Commonwealth v. City Realty Co., 56 D. & C. 167.

The cases cited by plaintiff's counsel do not support and sustain the exceptions. They are to the effect that the lien of a mortgage upon the premises owned by a corporation executed by a predecessor in title of the corporation, is superior to a lien of the Commonwealth for capital stock and corporate loan taxes assessed against the corporation after the mortgage was given,

and a foreclosure and sale of the premises under such mortgage divests the Commonwealth of its lien: Sweeney v. Arrowsmith, 43 Pa. Superior Ct. 268; Scranton Lackawanna Trust Co., to use, v. Scranton Lackawanna Trust Co., Guardian et al., 310 Pa. 125; Davis v. Seltzer, 313 Pa. 382. This line of cases has no application to the question here involved. In Reconstruction Finance Corp. v. Fallston Co., 53 D. & C. 226, cited by exceptant's counsel, the Commonwealth's claim for unpaid contributions for unemployment compensation was denied participation and priority in the distribution of the fund realized by judicial sale, solely on the ground that the claim had not been made a lien at the time of the sheriff sale, but was entered prior to the distribution. In the later case of Blue Ball National Bank v. Diller et ux., 53 D. & C. 445, it was held, that a claim by the Commonwealth out of the proceeds of a judicial sale, based on a lien filed for delinquent contributions under the Pennsylvania Unemployment Compensation Act, as amended, was entitled to priority in distribution of the fund over the claim of the judgment creditor.

In the present case, the lien of the chattel mortgage upon the chattel therein described, was executed by defendant corporation directly to plaintiff and is inferior to the claim and lien of the Commonwealth of Pennsylvania, Department of Labor and Industry, for unpaid contributions, interest and penalty upon the sale of said chattel; and in the distribution of the fund realized therefrom, the Commonwealth was entitled to priority over the lien of plaintiff's execution in the foreclosure of the chattel mortgage.

### Order

Now, July 23, 1949, plaintiff's exceptions to the sheriff's distribution are dismissed.